**Robert ELLISON and Pauline Ellison, Appellants,**

**v.**

**VALLEY VIEW DAIRY, INC., a forfeited Missouri corporation, et al., Respondents.**

**No. 19811.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 20, 1995.

Rehearing Denied Aug. 17, 1995.

M. Elise Branyan, Springfield, for appellants.

Craig A. Smith, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for respondents Valley View Dairy, Inc., A.S. Green and Daryl Davis.

Patricia J. Shilling, Metzger & Shilling, Ozark, for respondents Gary Davis and Mildred Davis.

CROW, Judge.

The trial court dismissed the two-count third amended petition of Plaintiffs, Robert Ellison and Pauline Ellison, on the ground that the cause of action was barred by the "statute of limitations." Plaintiffs appeal. We shall address their two points relied on after summarizing the allegations of the petition, which we designate "Petition IV."

Petition IV alleges Plaintiffs feed and care for cattle for profit.

The first of the five defendants named in Petition IV is "Valley View Dairy, Inc., a forfeited Missouri corporation." We henceforth refer to it as "VVD."

Petition IV avers VVD was a Missouri corporation doing business in 1980 "at about which time its corporate charter was forfeited."

Petition IV next avers that in July, 1982, Merle Davis ("Merle")[1] bought 25 heifers from Plaintiffs for $500 per head and left them on Plaintiffs' farm to be cared for by Plaintiffs for one dollar per day per head. Merle agreed to pay Plaintiffs the purchase price and care fee when he took possession of the heifers.

Petition IV further alleges that in July, 1982, Merle, acting on behalf of VVD, contracted with Plaintiffs to care for 284 additional heifers, to be delivered later to Plaintiffs' farm. The care fee was the same, one dollar per day per head. From September 13, 1982, until November 14, 1982, 284 heifers were delivered to Plaintiffs' farm per the agreement.

Petition IV continues by pleading that all 309 heifers were turned over by Plaintiffs to Merle, acting on behalf of VVD, between July 19, 1983, and January 12, 1984. Merle, acting on behalf of VVD, confirmed to Plaintiffs during said period that VVD would abide by the contract and pay Plaintiffs what they were due. Plaintiffs relied on Merle's representations and allowed him, on behalf of VVD, "to retake possession of the heifers."

Petition IV goes on to allege that Merle died May 27, 1984. On that date, VVD owed Plaintiffs $143,009, which remains unpaid. Count I of Petition IV prays for judgment against VVD (and the other defendants, identified *infra*) in that amount, with interest from January 12, 1984. Count II seeks $500,000 punitive damages from all defendants.

An attentive reader will have noted that the events which begot this suit began some two years *after* VVD's corporate charter was forfeited.

Forfeiture of the charter destroyed VVD's existence as a legal entity. *Clark Estate Co. v. Gentry*, 362 Mo. 80, 240 S.W.2d 124, 127[1] (1951), *cert. denied*, 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951); *Mark Twain Electric, Inc. v. Yalem*, 825 S.W.2d 366, 368 (Mo.App.E.D.1992). Under § 351.525(4) as it existed on January 1, 1980,[2]

---

1. Because four individuals in this narrative bear the surname "Davis," we identify them by their respective forenames. We mean no disrespect.

2. That version of § 351.525 appears in H.B. No. 773, Laws of Missouri 1979, pp. 346–47. Section 351.525 was repealed by S.C.S.H.B. No. 219, Laws of Missouri 1991, pp. 845–55.

the directors and officers of VVD in office when the forfeiture occurred became trustees of VVD, jointly and severally responsible to its creditors to the extent of its property and effects coming into their hands. *Mercantile Trust Co., National Association v. Mosby,* 623 S.W.2d 22, 24[3] (Mo.App.E.D.1981).

However, Plaintiffs do not claim they were creditors of VVD on the date its charter was forfeited. Instead, they claim VVD became indebted to them by reason of their dealings with Merle which commenced some two years after the forfeiture.

▮ Because VVD no longer existed when those events occurred, VVD cannot be indebted to Plaintiffs. VVD's trustees were without power to transact any business for VVD except to wind up its affairs, pay its debts and distribute its assets. *Leibson v. Henry,* 356 Mo. 953, 204 S.W.2d 310, 316[7] (banc 1947).

▮ If the allegations of Petition IV are true, and if Merle was a statutory trustee of VVD, he was liable to Plaintiffs for the amount prayed for in Count I. That is because statutory trustees who transact new business in the name of a defunct corporation are jointly and severally liable for any obligations they so incur. *State ex rel. Jay Bee Stores, Inc. v. Edwards,* 636 S.W.2d 61, 63[4] (Mo. banc 1982).

Plaintiffs do not explain how they can sue VVD fourteen years after it ceased to exist,[3] and our research has turned up no authority for such a suit. However, we need not worry about that because VVD could not have been liable to Plaintiffs for the business transacted in its name by Merle two years after VVD ceased to exist. For that reason alone, no error occurred when the trial court dismissed Petition IV as to VVD.

We turn now to the four other defendants: Gary R. Davis ("Gary"), A.S. Green ("Green"), Mildred Davis ("Mildred") and Daryl Davis[4] ("Daryl"). Petition IV avers that Gary was a director of VVD in 1980 when its charter was forfeited, that Green was an officer and director of VVD at said time, that Daryl was an officer and director of VVD at said time, and that Mildred is Merle's widow and personal representative, and was a "stockholder" of VVD.

Petition IV asserts that after Merle died, the four individual defendants acknowledged to Plaintiffs that Plaintiffs were entitled to $143,009, but told Plaintiffs there was no money available to pay them. These representations were false in that the 309 heifers had been sold and the proceeds had been "distributed to these individual defendants," who used the proceeds for sundry purposes including payment of "indebtedness on real property owned by these defendants and [Merle]."

Petition IV continues by pleading that the individual defendants promised Plaintiffs "through the summer of 1984" that Plaintiffs would be paid, but the individual defendants had no intention of paying. The individual defendants thus knew their representations to Plaintiffs were false when made. Plaintiffs reasonably relied on the representations, unaware of their falsity. Because of their reliance, Plaintiffs did not "pursue a claim" against Merle's estate. Had Plaintiffs known the representations were false, Plaintiffs "would have taken appropriate legal action to protect their interests."

Petition IV goes on to allege that Plaintiffs first realized they had been misled and defrauded when Merle's estate was "closed" on

---

3. Plaintiffs began this suit by filing their original petition March 26, 1990, but did not name VVD a defendant until Petition IV, filed January 28, 1994. Therefore, § 351.565, RSMo 1978, which was in effect when VVD's charter was forfeited, and which provided that "dissolution" of a corporation by issuance of a certificate of dissolution by the Secretary of State shall not impair any remedy available against the corporation for any liability incurred prior to dissolution if suit be commenced within two years thereafter, could not have applied. That is because, as we have seen, VVD incurred no liability to Plaintiffs prior

to forfeiture of its charter. Furthermore, Plaintiffs did not sue VVD within two years after forfeiture. Accordingly, we need not decide whether "dissolution," as used in § 351.565, meant forfeiture of charter. Section 351.565 was repealed by S.C.S.H.B. No. 1432, Laws of Missouri 1990, pp. 964–66.

4. His forename is spelled "Darrel" in Petition IV and "Daryl" in his motion to dismiss. We assume the latter spelling is correct.

June 5, 1985. At that time, Plaintiffs realized "it would be necessary to file suit against these defendants."

▮ In their brief, Plaintiffs characterize their claim against the individual defendants as "a cause of action for fraud." In that regard, *White v. Mulvania*, 575 S.W.2d 184 (Mo. banc 1978), holds that one's state of mind, or intent, is an existing fact, the misrepresentation of which can constitute fraud. *Id.* at 188[6], citing *Dillard v. Earnhart*, 457 S.W.2d 666 (Mo.1970). *Dillard* explains that the intention of a promisor not to perform cannot be established solely by proof of nonperformance, but may be shown by any evidence which sufficiently indicates its existence. 457 S.W.2d at 671.

The individual defendants maintained in the trial court that the five-year statute of limitations, § 516.120,[5] applies to Plaintiffs' claim. Plaintiffs, as we understand their brief, agree that § 516.120 applies. The pertinent part of § 516.120 reads:

"Within five years:

. . .

(5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud."

Plaintiffs argue their cause of action against the individual defendants accrued no earlier than June 5, 1985, the date Merle's estate was closed and Plaintiffs learned that "the defendants had sold the cattle and dispersed the proceeds for personal purposes."

Plaintiffs commenced this suit March 26, 1990, by filing their original petition [6] ("Petition I"). However, Petition I named only two defendants, Gary and Green. Plaintiffs filed a first amended petition later in 1990 and a second amended petition in 1991. Gary and Green were the only defendants named in those petitions. Not until Petition IV, filed January 28, 1994, did Plaintiffs add Mildred and Daryl as defendants. That was eight and a half years after Plaintiffs say the cause of action accrued. Unless the addition of Mildred and Daryl relates back to the filing of Petition I, the cause of action against them is obviously barred by § 516.120.

*Windscheffel v. Benoit*, 646 S.W.2d 354 (Mo. banc 1983), is instructive on that issue. There, a plaintiff sued a hospital within the applicable period of limitation. Later, after the period expired, the plaintiff filed an amended petition adding a doctor as a defendant. The trial court granted the doctor's motion for summary judgment on the ground that the action against him was barred. On appeal, the plaintiff maintained that by reason of Rule 55.33(c), the amended petition related back to the date the original petition was filed. The Supreme Court of Missouri disagreed, saying:

"Rule 55.33(c) applies only to amendments 'changing the party against whom a claim is asserted.' Here, plaintiff wished to *add*, not *change*, a party to his suit. Research Hospital remained a party until May 14, 1980 when plaintiff and the hospital settled. Moreover, for the Rule to apply, plaintiff must have made a mistake in selecting the proper party to sue, *i.e.*, plaintiff must have brought an action against the wrong party. He states that defendant was inadvertantly [sic] omitted from the original petition which constitutes a mistake allowing the amendment to relate back to the original pleading. But Rule 55.33(c) is a remedy for a mistake in *identity*, and the remedy is a *change* in party. Plaintiff here made no mistake in identity nor does he argue any such mistake. Moreover, he does not seek to *change* parties; he seeks to add one. The rule is wholly inapplicable to plaintiff's case."

646 S.W.2d at 356–57[2] (emphasis in original). *Accord: Shroyer v. McCarthy*, 769 S.W.2d 156, 158–60 (Mo.App.W.D.1989).

Here, Plaintiffs did not seek in Petition IV to change any defendant named in Petition I. Gary and Green were named defendants in Petition I and have remained defendants in all subsequent petitions, including Petition IV. No other defendant was named in any

---

**5.** Section 516.120 as it existed in RSMo 1978 was carried forward unchanged in RSMo 1986.

**6.** Footnote 3, *supra*.

petition until Petition IV, when VVD, Mildred and Daryl were added as defendants. It is thus evident that Plaintiffs' purpose in naming Mildred and Daryl defendants in Petition IV was not to correct a mistake in identity of any previously named defendant.

It follows that Plaintiffs' cause of action against Mildred and Daryl is barred by § 516.120. No error occurred when the trial court dismissed Petition IV as to them.

This leaves only Gary and Green. Plaintiffs' second point relied on, which we address first, is based on the premise that the trial court misunderstood Petition IV's theory of liability against the individual defendants.

The trial court's analysis was that Plaintiffs had a contract with Merle, and Merle breached it when he paid Plaintiffs nothing at the time he took possession of the heifers. The trial court concluded Plaintiffs could have sued on the contract anytime thereafter. Inasmuch as all heifers were returned to Merle by January 12, 1984, and Plaintiffs did not file suit until March 26, 1990, the trial court concluded the statute of limitations had expired.

While that analysis might have been correct had Plaintiffs sought recovery from Merle—an issue we need not decide—it was incorrect as to Plaintiffs' claim against Gary and Green. As reported earlier, Plaintiffs' claim against Gary and Green is based on fraud, not on contract.

■ In determining whether Petition IV pled a cause of action for fraud, we deem all facts pled therein to be true and give Plaintiffs the benefit of every reasonable intendment. *Magee v. Blue Ridge Professional Building Co., Inc.,* 821 S.W.2d 839, 842[2] (Mo. banc 1991).

■ The elements of fraud are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or his ignorance of its truth, (5) the speaker's intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443[1] (Mo. banc 1988).

As to element 1, Petition IV pled that the individual defendants represented there was no money to pay Plaintiffs but promised Plaintiffs they would be paid.[7]

As to element 2, Petition IV pled the representations in the preceding paragraph were false.

As to element 3, Petition IV pled the representations were material in that they induced Plaintiffs to file no claim against Merle's estate.

As to element 4, Petition IV pled the individual defendants knew the representations were false in that the heifers had been sold, generating money with which to pay Plaintiffs, and the individual defendants did not intend to pay Plaintiffs.

As to element 5, Petition IV pled the individual defendants knew Plaintiffs would act on the representations by filing no claim against Merle's estate.

As to element 6, Petition IV pled Plaintiffs were unaware of the falsity of the representations.

As to element 7, Petition IV pled Plaintiffs relied on the representations being true.

As to element 8, Petition IV pled Plaintiffs had cared for cattle for VVD in the past and had always been paid, thus it was reasonable for Plaintiffs to rely on the representations.

As to element 9, Petition IV pled Plaintiffs were damaged because the representations induced them to refrain from filing a claim against Merle's estate.

■ Gary and Green maintain Petition IV is deficient because the facts pled do not demonstrate that Plaintiffs' damage was a direct and proximate result of the alleged misrepresentations (element 9). Gary and Green emphasize that in order for a misrepresentation to be actionable, there must be a

---

**7.** Petition IV does not ascribe any particular representation to any specific defendant, but instead attributes the representations generally to the individual defendants as a group.

causal connection between it and the harm allegedly sustained. *Heberer,* 744 S.W.2d at 443.

Gary and Green point out that Petition IV avers VVD owed Plaintiffs $143,009 when Merle died and all of the misrepresentations made by the individual defendants where uttered after Merle died. Consequently, argue Gary and Green, Plaintiffs' damages "had already been incurred prior to any alleged misrepresentations of Defendants." Therefore, reason Gary and Green, there could not have been a causal connection between any alleged misrepresentation and Plaintiffs' damages. In the words of Gary and Green: "Plaintiffs' damages ... would have been the same whether or not the representations had been made by Defendants."

We agree Petition IV pleads Plaintiffs were owed $143,009 several months before Merle died. Obviously, no misrepresentation by any individual defendant was the proximate cause of that debt. However, this does not mean Petition IV fails to plead facts establishing element 9.

Plaintiffs' theory is that the misrepresentations induced them to refrain from filing a claim against Merle's estate, thus passing up an opportunity to collect the $143,009. Based on this theory, the amount of actual damages Plaintiffs sustained by reason of the misrepresentations is the amount they could have recovered from Merle's estate had they filed a successful claim. Because Petition IV does not allege how much money was available in Merle's estate to pay Plaintiffs, it is impossible to forecast whether Plaintiffs will be able to prove the misrepresentations caused $143,009 damages. If Plaintiffs fail to prove they could have collected any amount from Merle's estate, their fraud claim against Gary and Green will necessarily fail.[8]

However, that possibility does not render Petition IV vulnerable to dismissal for failure to plead Plaintiffs were damaged as a direct and proximate result of the misrepresentations. We hold Petition IV pleads enough facts to satisfy element 9.

■ Gary and Green also argue Petition IV fails to allege facts demonstrating Plaintiffs had a right to rely on the misrepresentations (element 8).

Earlier in this opinion, we noted Petition IV pled Gary was a director of VVD in 1980 when its charter was forfeited, and Green was an officer and director of VVD at that time. As to Plaintiffs' right to rely on the individual defendants' representations, Petition IV pled Plaintiffs had cared for cattle for VVD in the past and had always been paid, hence it was reasonable for Plaintiffs to rely on the representations.

Gary and Green point out Petition IV does not plead that Plaintiffs knew Gary and Green were officers and directors of VVD, or that Plaintiffs knew VVD's corporate charter had been forfeited, or that Plaintiffs knew Gary and Green became statutory trustees of VVD when the forfeiture occurred. Therefore, say Gary and Green, Petition IV sets forth no facts to support a finding that Plaintiffs had a right to rely on anything Gary or Green said.

We disagree. Giving Petition IV the benefit of every reasonable intendment, *Magee,* 821 S.W.2d at 842[2], it indicates Plaintiffs believed, at the time the individual defendants allegedly made the misrepresentations, that the individual defendants had an interest in VVD. Petition IV pled most of the transactions in issue were conducted by Merle acting on behalf of VVD. Had Plaintiffs been unaware of any connection between the individual defendants, Merle and VVD, there would have been no reason for Plaintiffs to discuss payment of the $143,009 with the individual defendants. At the time of the misrepresentations, Plaintiffs were not required to know whether VVD's corporate

---

8. As noted *supra,* statutory trustees of a defunct corporation who transact new business in its name after its demise are jointly and severally liable for any obligations they incur. *Edwards,* 636 S.W.2d at 63[4]. It is thus arguable Plaintiffs could pursue a claim against Gary and Green on that theory, i.e., Gary and Green are personally liable for the transactions conducted by Merle in VVD's name after its demise. However, we do not read Petition IV as alleging a claim against Gary and Green on that theory. Accordingly, we need not consider whether such a claim could succeed. Additionally, we do not imply actual damages in such a claim would be limited to the sum Plaintiffs could have recovered from Merle's estate.

status was intact or the precise relationship between Gary, Green, Merle and VVD. We hold Petition IV pleads enough facts to satisfy element 8. Accordingly, Plaintiffs' second point, which maintains the trial court erred in dismissing Petition IV, is meritorious in regard to the dismissal as to Gary and Green.

Plaintiffs' first point, which we have not yet addressed, avers the trial court erred in dismissing Petition IV because the court should have granted Plaintiffs another opportunity to amend. Plaintiffs assert that in a fraud action, relevant facts may become available only after extensive discovery.

This claim of error has a hollow ring in that the suit had been pending four years and five months when the trial court dismissed Petition IV. However, we need not decide whether the trial court acted too abruptly.

We have already concluded VVD could not have been liable to Plaintiffs for business transacted in its name by Merle two years after VVD ceased to exist. We have also concluded a fraud claim against Mildred and Daryl was barred by § 516.120 when Plaintiffs first named Mildred and Daryl as defendants in January, 1994. It is thus evident Plaintiffs could never plead a viable fraud claim against VVD, Mildred or Daryl. The first point is therefore moot as to that trio. Inasmuch as we have found Petition IV sufficient to plead a fraud claim against Gary and Green, the first point is also moot as to them.

The order of dismissal is affirmed insofar as it dismisses Petition IV against VVD, Mildred and Daryl. The order of dismissal is reversed insofar as it dismisses Petition IV against Gary and Green. The cause is remanded to the trial court for further proceedings as to Gary and Green.

GARRISON, P.J., and PARRISH, J., concur.

## ON MOTION FOR REHEARING

PER CURIAM.

The only parties filing a motion for rehearing were Gary and Green. Their motion avers this Court overlooked two material matters.

The first alleged oversight concerns only Green. The motion for rehearing avers Petition IV fails to plead facts "which would support personal jurisdiction" over Green. The motion asserts Green filed a motion to dismiss Petition IV in the trial court raising that ground, hence we should uphold the trial court's dismissal of Petition IV as to Green on that ground.

Petition IV alleges Green resides at Brooker, Florida, and (as reported in this Court's opinion) was an officer and director of VVD in 1980 when its charter was forfeited.

Green's motion to dismiss Petition IV asserts the trial court lacks jurisdiction "over the person" of Green. The motion does not explain why, but refers the trial court to written suggestions filed contemporaneously with the motion. The suggestions argue that Petition IV fails "to allege facts sufficient to establish the necessary minimum contacts with this forum to allow the action to proceed against ... Green."

It is evident from the record that the trial court never reached that issue. As recounted in the first sentence of this Court's opinion, the trial court dismissed Petition IV on the ground that the cause of action was barred by the statute of limitations.

Whether it would be proper to uphold the dismissal of Petition IV as to Green for lack of personal jurisdiction was not addressed in the briefs. Furthermore, we note that according to Petition I, Green was living in Florida at the time it was filed. In response to Petition I (which contained four counts), Green filed a motion to dismiss on two grounds: (1) failure of the petition to state a claim upon which relief can be granted, and (2) the claims are barred by the statute of limitations. The motion said nothing about lack of personal jurisdiction.

Several months later, Green moved the trial court to dismiss two counts of Petition I because Plaintiffs failed to comply with an order requiring a more definite statement. This motion, like the one referred to in the preceding paragraph, said nothing about lack of personal jurisdiction.

Several weeks later, Green filed a written objection to a request by Plaintiffs for a change of judge, stating: "Defendant A.S. Green objects to change of judge in this action."

Our exploration of the legal file reveals Green first raised the jurisdictional issue some 27 months after Petition I was filed. Therefore, Plaintiffs may have a basis for claiming Green waived any challenge to the trial court's jurisdiction over him. *See:* Rule 55.27(g), Missouri Rules of Civil Procedure (1992); *State ex rel. White v. Marsh,* 646 S.W.2d 357 (Mo. banc 1983); *Kloos v. Corcoran,* 643 S.W.2d 94 (Mo.App.E.D.1982).

Because (a) the trial court has yet to rule on the jurisdictional issue, (b) the subject is not developed in the briefs, and (c) resolving the question may require the hearing of evidence to determine whether Green had sufficient minimum contacts with Missouri to subject himself to the jurisdiction of its courts (*see: M & D Enterprises, Inc. v. Fournie,* 600 S.W.2d 64 (Mo.App.S.D.1980)), we find no merit in the request for a rehearing as to the jurisdictional issue.

The second segment of the motion for rehearing reargues issues determined by this Court's opinion. Further comment is unwarranted.

The motion for rehearing is denied.