SADDLERIDGE ESTATES, INC., and McClain Brothers Real Estate, LLC., Respondent–Appellants,

v.

Eugene RUIZ and Charlene Ruiz, Appellant–Respondents.

Nos. WD 70806, WD 71311.

Missouri Court of Appeals, Western District.

Aug. 3, 2010.

As Modified Sept. 28, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 2010.

Application for Transfer Denied Nov. 16, 2010.

Gary M. Steinman, Gladstone, MO, for Appellant–Respondent.

Daniel A. Thomas, Independence, MO, for Respondent–Appellants.

Before THOMAS H. NEWTON, P.J., JAMES EDWARD WELSH, and GARY D. WITT, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. Eugene and Mrs. Charlene Ruiz appeal the trial court's judgment in favor of Saddleridge Estates, Inc. (Saddleridge) and McClain Brothers Real Estate, L.L.C. (McClain). Saddleridge and McClain (collectively "Respondents") sued the Ruizes for breach of contract, fraudulent misrepresentation, breach of the implied covenant of good faith and fair dealing, and punitive damages. Saddleridge also sued the Ruizes for negligent misrepresentation. A jury found the Ruizes liable for breaching the contract with Saddleridge and McClain, for negligently and fraudulently misrepresenting material facts to Saddleridge and McClain, and for punitive damages. The trial court entered judgment in accord with the verdict. We affirm.

## Factual and Procedural Background

The Ruizes contacted McClain, the exclusive real estate broker for Saddleridge, to purchase a lot and build a home in Saddleridge, a real estate subdivision in Independence. The Ruizes, who lived in Platte County, told McClain that they desired to build a home on the lot so their children could be near Mr. Ruiz's parents, who had recently moved to the villas in Saddleridge. After a year of dealings with McClain, the Ruizes purchased a lot from Saddleridge. The Ruizes purchased the lot for $95,000, which was less than the agreed upon price of $150,000, because the land contained rocks that would have to be excavated to build a home compliant with Saddleridge's specifications. Mr. Ruiz took out a $95,000 loan against one of his businesses to purchase the lot.

Pursuant to the terms of the Lot Contract, the Ruizes were required to build on the lot.[1] The contract also provided that

---

1. The contract in relevant part states:
 In this subdivision, it is understood that the Lot Contract, Builders Agreement/Contract, and Residential New Construction Sale Contract are all integrated and one does not stand-alone without performance on all. Therefore, the buyer understands and agrees that a six percent (6%) commission

the Ruizes would begin construction on the lot within six months unless their current home did not close "timely." If their home did not close "timely," they had another six months in which to begin construction. However, if construction did not commence at "the end of one year," the Ruizes had to list the property with McClain at six percent commission "until sold." The Ruizes, McClain, and Saddleridge signed the Lot Contract on February 26, 2004. They closed on the lot April 4, 2004.

On August 6, 2004, the Ruizes sold their home but did not tell Ms. Patti Bruch, McClain's agent, or Saddleridge. Shortly thereafter, the Ruizes purchased a home in a different subdivision near Saddleridge. Two years after the lot was sold, Ms. Bruch performed a records check and discovered the Ruizes had sold their home within six months of purchasing the lot. On May 9, 2006, Ms. Bruch contacted Mr. Ruiz, seeking to enforce the contract to list the lot. The Ruizes requested a price of $190,000; she told them that no lot in the subdivision had sold at that price. On May 29, 2006, Ms. Bruch faxed the Ruizes a Listing Agreement with their requested price of $190,000. The Ruizes did not sign the Listing Agreement. Ms. Bruch also informed them of prospective buyers. In August 2006, Ms. Bruch faxed the Ruizes an offer from a couple to purchase the lot for $140,000. The Ruizes did not accept the offer or make a counteroffer.

In September 2006 and in November 2006, the Ruizes listed the lot as collateral securing lines of credit totaling $160,000. All of the money was used as capital for one of Mr. Ruiz's businesses. In January 2007, Respondents sued the Ruizes for breach of contract, fraudulent misrepresentation, breach of the implied covenant of good faith and fair dealing, and punitive damages. Saddleridge also sued them for negligent misrepresentation.

The above evidence was presented at a jury trial. The jury found the Ruizes liable for breaching the contract with Respondents, for negligently and fraudulently misrepresenting material facts to Respondents, and for punitive damages. It awarded Saddleridge $56,000 in compensatory damages and $190,000 in punitive damages. It awarded McClain $60,000 in compensatory damages and $65,000 in punitive damages. The Ruizes filed a motion for judgment notwithstanding the verdict (JNOV), remittitur, and in the alternative, a motion for new trial. The trial court overruled the motion and entered judgment reflecting the jury's determinations. The Ruizes appeal.

### Legal Analysis

 The Ruizes argue eight points on appeal. The first point challenges the trial court's ruling precluding the Ruizes from being called as witnesses to rebut testimony provided in a videotaped deposition during plaintiffs' case in chief. Points two through six challenge the trial court's denial of the motion for JNOV.[2] The seventh

---

is to be paid to [McClain], as agent on the price of the lot and any house built on the lot (in the event the Residential New Construction Sales Contract does not close, home will be listed with [McClain] at 6% commission). For the purpose of computing said commission, the price of the lot shall be determined by the seller and agreed by the buyer. The price of the house shall be the price set forth in the

builder agreement/contract and shall include all actual costs and fees.

2. Respondents argue that points two through six have not been preserved because the motions for directed verdict (DV) were insufficient under Rule 72.01(a), which requires a motion for DV to set forth specific grounds. The written motions for DV do not address any of the grounds argued on appeal. However, the Ruizes' first oral motion for DV

point challenges the trial court's giving of verdict directors on the plaintiffs' claims. The eighth and final point challenges the trial court's admitting evidence of damages by Saddleridge that were not disclosed during discovery or alleged in the petition. Because the Ruizes' third point challenges the evidentiary support for the damages, we address the third point during our discussion of the eighth point.

### *Prohibiting "cross-examination" was not error.*

■ In their first point, the Ruizes argue that the trial court erred in prohibiting their counsel from calling them to testify after portions of their videotaped deposition statements were introduced in plaintiffs' case in chief. The court prohibited live testimony rebutting the deposition statements because the Ruizes would be able to address those statements during their defense. The trial court instructed that the Ruizes could play any portion of the deposition immediately following the selections played by the plaintiffs. We review the trial court's exclusion of evidence for an abuse of discretion. *KRP ex rel. Brown v. Penyweit,* 219 S.W.3d 829, 834 (Mo.App. W.D.2007).

The Ruizes claim that the trial court erred in prohibiting them from taking the stand to rebut the statements played by plaintiff because they were entitled to "cross-examination" under section 491.070 [3] despite the fact that the direct testimonies were videotaped depositions. Section 491.070 grants civil litigants the right to cross-examine witnesses who provide evidence against them. Under section 491.030, civil litigants can compel adverse parties to testify as witnesses in the litigant's case in chief. Counsel for the adverse party has the right to cross-examine the opposing party the same as other witnesses. § 491.030. These statutes are not applicable here because the Ruizes were not called as witnesses; rather their deposition statements were played for the jury.

■ "Depositions may be used in court for any purpose." Rule 57.07(a). After selections from a deposition are proffered to the jury, the opposing party's remedy is to "utilize the deposition to clarify ..., rebut the inferences to be drawn from the [selections], or explain its side of the controversy." *Nugent v. Owens Corning Fiberglas, Inc.,* 925 S.W.2d 925, 929 (Mo.App. E.D.1996); *see also Keith v. Burlington N.R. Co.,* 889 S.W.2d 911, 922 (Mo.App. S.D.1994). Thus, the trial court did not abuse its discretion in prohibiting counsel from calling the Ruizes to the stand for rebuttal because the Ruizes' sole recourse was to utilize their depositions to their favor. Moreover, the Ruizes had the opportunity to develop and explain their deposition statements during their defense

argued that the court should rule in their favor because the plaintiffs failed to meet the necessary elements of all six claims. The second oral motion for DV specifically argued the failure to prove breach of contract. It did not address the lack of evidence to support monetary damages. The motion, however, addressed the punitive damages and the lack of evidence to show a pre-contractual intent to not build on purchased land. We believe the oral motions specified sufficient grounds to preserve the second and third issues for review. The general argument of insufficien-

cy of the evidence to prove the elements of a breach of contract encompasses any challenges to the existence of a contract and justification for monetary damages. The issues in points four through six were specifically addressed in the oral motions for DV, and thus are preserved. We consequently reject Respondents' claim of waiver.

**3.** Statutory references are to RSMo 2000 unless otherwise indicated, and rule references are to Missouri Rules of Civil Procedure 2009.

with direct testimony. Consequently, the Ruizes' first point is denied.

### McClain was a party to the contract.

■ In their second point, the Ruizes argue that the trial court erred in denying their motion for directed verdict and judgment notwithstanding the verdict as to McClain's claims ((1) breach of contract, (2) fraudulent misrepresentation, (3) breach of the implied covenant of good faith and fair dealing, and (4) punitive damages) because McClain was not a party to the contract in dispute or to the other contracts therein referenced, despite its representative's signature.

■ To prevail on their motion for directed verdict, the Ruizes had to show that McClain failed to make a submissible case. *Porter v. Toys 'R' Us–Del., Inc.,* 152 S.W.3d 310, 315 (Mo.App. W.D.2004). "A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.,* 304 S.W.3d 98, 104 (Mo. banc 2010) (citing *Howe v. ALD Servs., Inc.,* 941 S.W.2d 645, 650 (Mo.App. E.D.1997)). A contract requires mutual obligations and consideration. *See Bengimina v. Allen,* 375 S.W.2d 199, 202 (Mo. App.1964).

The Ruizes argue that a contract did not exist because there were no " 'mutual agreements' or consideration exchanged" between them and McClain. Language within the contract designates exclusive listing rights to McClain if the Ruizes failed to commence building a home at the end of one year. This contractual language shows that the Ruizes owed McClain the obligation to commence building a home so that McClain could receive the commission and, in the alternative, to use McClain to sell the land at a six percent commission if no home was built within a year. That same language implies McClain's obligation to market the property, sell it, and give the proceeds to the Ruizes minus its six percent commission. Thus, there were mutual obligations and consideration for the contract because McClain's and the Ruizes' promises conferred legal duties and liabilities. *See Bengimina,* 375 S.W.2d at 202–03. The Ruizes' second point is denied.

### Punitive damages were supported by the evidence.

■ In their fourth point, the Ruizes argue that the JNOV should have been granted as to punitive damages because there was no evidence that either of them acted with evil motive or reckless indifference to Respondents' rights. Respondents were required to present clear and convincing evidence that the Ruizes possessed the requisite mental intent of willful or reckless disregard of Respondents' rights. *See Rinehart v. Shelter Gen. Ins. Co.,* 261 S.W.3d 583, 591 (Mo.App. W.D.2008). To substantiate the punitive damages claim, Respondents adduced evidence that the Ruizes used the lot to collateralize a business line of credit with no intention of ever building on the lot in reckless disregard of Saddleridge's right to have a developed lot and McClain's right to receive a commission.

The Ruizes argue that this evidence does not support a finding that they did not intend to build on the lot at the time of purchase, and they list facts supporting a finding against evil motive. However, the clear and convincing evidence that supports a finding to uphold the punitive damages must guide us. *Fabricor v. E.I. DuPont de Nemours & Co.,* 24 S.W.3d 82, 96 (Mo.App. W.D.2000) (stating the evidence

is viewed in the light most favorable to the submission of punitive damages and contrary evidence and inferences are disregarded).

The following facts support a finding of reckless disregard of Saddleridge's right to sell the property and McClain's right to obtain a commission after the Ruizes failed to build after a year: the Ruizes' failure to inform McClain that their home had been sold within six months or that they purchased a home in a neighboring division; the Ruizes'. refusal to sell the lot for less than $190,000 after McClain informed them that no empty lot had ever sold for that price; and the Ruizes' use of the lot as collateral for two separate lines of credit after being notified of their contractual obligation to list the property for sale, and of prospective buyers for the property. Therefore, the Ruizes' fourth point is denied.

■ In their fifth and sixth points, the Ruizes argue that the JNOV should have been granted because there was no evidence to substantiate a finding that the Ruizes falsely represented their intent to build on the lot at the time they signed the lot contract or that the Ruizes did not use reasonable care in stating they would build on the lot at the time of purchase. To submit a claim to the jury, a plaintiff must adduce evidence for each element of its claim. *See Porter,* 152 S.W.3d at 315. We view the evidence in the light most favorable to the verdict to determine if the evidence substantiates the misrepresentations claims. *See id.*

■ Fraudulent misrepresentation is shown by adducing evidence of:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) his right to rely thereon; and, (9) the hearer's consequent and proximately caused injury.

*Droz v. Trump,* 965 S.W.2d 436, 441 (Mo. App. W.D.1998). The Ruizes argue that Respondents failed to show pre-contract evidence that the Ruizes never intended to build on the lot at the time they signed the contract. Contrary to the Ruizes' contention, post-contract acts may also support a finding of a pre-contract intent not to build at the time of signing. *See Ellison v. Valley View Dairy, Inc.,* 905 S.W.2d 93, 97 (Mo.App. S.D.1995) (stating any evidence, except sole proof of nonperformance, may be used to show a present intent not to perform).

Respondents' theory was that the Ruizes falsely promised to build on the lot so that Mr. Ruiz could obtain the land and later sell it at a higher price because he was speculating on the land—intending to hold it until a profit could be made from the sale of it. The following evidence when considered together supports Respondents' theory from which the jury could reasonably infer that Mr. Ruiz falsely promised to build a home on the lot within the time specified at the signing of the lot contract. First, Mr. Ruiz had several business, one of which involved rehabilitating homes to increase their value, he used money from one of those businesses to purchase the lot, and he referred to the lot as an investment during his deposition. Second, Mr. Ruiz admitted that he had inserted the word "timely" in the lot contract to indicate the total time the house had been on the market, knowing that the selling of his then current home would never be "timely" under his definition. Third, the Ruizes purchased a home in a nearby development shortly after selling their Platte County home without inform-

ing Saddleridge or McClain. Fourth, Mr. Ruiz failed to present builder plans to McClain within the time specified. Fifth, Mr. Ruiz admitted he refused to list the property for anything less than approximately twice what he paid for it because he wanted to make a profit.

As for Ms. Ruiz, there was evidence from which a reasonable juror could find that she shared her husband's intent not to build on the lot within the time specified when she signed the Lot Contract. Ms. Ruiz admitted that she signed the contract with an understanding that they were required to build a home within a certain time. Ms. Ruiz also admitted that she discussed the listing price with her husband and agreed upon $190,000 for the lot based on the six percent commission owed to McClain, the expenses they incurred in maintaining the lot, and their unwillingness to release the land easily because it was valuable to them. Her testimony supports an inference that, although Mr. Ruiz handled the finances, Ms. Ruiz discussed matters with him before he carried them out. Because she failed to inform McClain or Saddleridge that they had sold their Platte County home, the jury could infer that the Ruizes discussed not building on the lot and treating the land as an investment, and that Mr. Ruiz implemented the plan.

Thus, there was evidence from which a reasonable juror could find that the Ruizes misrepresented their intent to build on the lot. Because we have determined there was a submissible case for fraudulent misrepresentation against the Ruizes, we do not discuss the submissibility of the negligent misrepresentation. Accordingly, the Ruizes' fifth and sixth points are denied.

*Failing to submit separate verdict forms was not prejudicial.*

■ In their seventh point, the Ruizes argue that the trial court erred in submitting verdict directors that failed to distinguish between Mr. Ruiz and Mrs. Ruiz when the petition alleged counts against them both in their individual capacity, depriving the jury of the opportunity to find that one of the parties was not liable. Respondents argue that this issue was not preserved because the Ruizes only objected to verdict forms but not the verdict directors. To preserve a challenge to jury instructions, the party must make specific objections (state the matter being objected and the grounds of the objection) to the instructions before the jury retires to deliberate and must raise the same objections in the motion for new trial. Rule 70.03

According to the record, the Ruizes only objected to the submission of the verdict forms and not the verdict directors. During a conference discussing jury instructions, the Ruizes argued that the verdict forms should provide the jury with choice to find one but not the other liable, rather than a request to find them collectively either liable or not liable. Yet they stated that they had no objections to the verdict directors. However, in their motion for new trial, the Ruizes alleged errors as to the submission of both the verdict directors and verdict forms.

The Ruizes argue that the challenge to the verdict directors is preserved because the language objecting to the verdict forms also applies to the verdict directors because they argued that the finding of liability needs to be as to each party for each claim. However, because they only objected to the verdict forms, it is the only challenge to the jury instructions preserved.

■ Relying on *Bender v. Colt Industries, Inc.,* the Ruizes argue that the verdict directing instruction should designate

the party against whom the instruction is directed. 517 S.W.2d 705, 708 (Mo.App. 1974). The Ruizes claim that the directors and the forms failed to delineate the actions or inactions of each appellant and was thereby prejudicial. Respondents assert that no prejudice ensued because the claims were alleged in the petition against both of them and they argued that the Ruizes were not liable during closing argument without differentiating their liability. Respondents are correct. The Ruizes' liability was alleged and submitted together so the jury was not confused by the instructions or verdict forms. The Ruizes' seventh point is denied.

### Award of damages to Saddleridge was proper.

In their eighth point, the Ruizes argue that the trial court erred in allowing Saddleridge to present evidence of damages not disclosed in discovery or alleged in its petition. The Ruizes claim that Respondents violated Rule 56.01(e)(1) when they did not allege $55,000 as damages based on a lot reservation contract in response to the Ruizes' interrogatory request. The Ruizes argue that Respondent's violation of Rule 56.01(e)(1) resulted in them not being prepared for trial. Respondents contend that the Ruizes failed to object at trial, so they cannot raise this issue on appeal.

Respondents' petition for damages alleged that the "undeveloped lot remains an eyesore for the other residents and members of the Saddleridge Community and has further had an adverse impact on the property values of the surrounding homes and lots." Respondents pleaded damages in general. At trial, Mr. McClain testified that the Ruizes were given a $55,000 rock allowance so that they could immediately build a house. He also testified that the $55,000 rock allowance would not have

been given had he known that the Ruizes were not going to build on the land. The jury assessed damages of $56,000 to Saddleridge, which is a thousand dollars more than the amount Saddleridge discounted from the original sales price to account for the compulsory rock excavation on the lot. The Ruizes argue that the jury should not have been allowed to consider the rock allowance testimony.

Broad discretion is given to courts concerning challenges made during trial to evidence that was not disclosed in the answers to interrogatories. *State ex rel. Mo. Highway & Transp. Comm'n v. Vitt,* 785 S.W.2d 708, 712 (Mo.App. E.D. 1990). "In the sound exercise of its discretion, [a court] may admit or exclude such evidence, or determine and impose appropriate sanctions for violations of rules governing interrogatories." *Id.* Parties consent to the trying of issues raised by evidence beyond the scope of the pleadings when they fail to "timely and specifically object to [such] evidence." *Holtmeier v. Dayani,* 862 S.W.2d 391, 399–400 (Mo.App. E.D.1993).

On direct examination, Ms. Bruch testified that the Ruizes originally agreed to pay $150,000 for the lot but ultimately purchased the lot for $95,000 because they would have an additional expense to excavate rock in order to build the mandatory basement. The Ruizes did not object to her testimony and asked Ms. Bruch, on cross-examination, if the reduced price was a result of their coercion, to which Ms. Bruch stated, "No." The Ruizes only objected after Respondent's counsel asked Ms. Bruch on redirect, "If they promised to pay 150 and only paid 95, does McClain . . . lose that money or does Saddleridge?" During the bench conference, Respondent's counsel explained that Saddleridge intended to argue that they would not have lowered the price if they knew the Ruizes

were not going to build. The Ruizes' counsel did not argue to the court that the fraud theory had not been pleaded. Because there was no objection to the evidence or the fraud theory, the submission of the rock allowance as a product of fraud was proper. The Ruizes' eighth point is denied.

 In their third point, the Ruizes argue that the trial court erred in denying the JNOV motion because no evidence supports an award of damages to Saddleridge. The Ruizes argue that the evidence did not support damages because Saddleridge claimed that it lost the benefit of other lot sales in its petition but presented evidence during trial that all the lots had been sold. Moreover, the Ruizes claim that the contractual remedy was reselling the land and that Respondents did not seek specific performance. Thus, the Ruizes argue that Respondents did not present evidence proving any monetary damages, nor were they entitled to them under the contract.

Although the contract did not provide for monetary damages, the trial court was allowed to award monetary damages on the fraud claims. *See Fiordelisi v. Mt. Pleasant, LLC*, 254 S.W.3d 120, 128 (Mo. App. E.D.2008) (stating plaintiff may affirm the contract and seek damages or disaffirm the contract and seek rescission when fraudulently induced to contract). The jury found that the Ruizes not only breached the contract but also fraudulently (and negligently) misrepresented that they were going to build a home when they entered the contract. Saddleridge was entitled to recover incidental losses and expenses suffered as a result of the Ruizes' misrepresentations. *See Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988). The evidence of the $55,000 rock allowance was an incidental loss suffered because of the Ruizes' misrepresentations

and, thus, was sufficient to sustain the award of damages for fraudulent misrepresentation. Because we have decided that the evidence concerning the rock allowance was properly admitted, there was evidence supporting the award of damages to Saddleridge. Consequently, the Ruizes' third point is denied.

### Conclusion

Therefore, we affirm the trial court's judgment.

JAMES E. WELSH and GARY D. WITT, JJ., concur.